**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                               **Case No. 07-CR-123**

**EDDIE CLAYBROOKS**
        **Defendant.**

---

### SENTENCING MEMORANDUM

The government charged defendant Eddie Claybrooks with participating in a cocaine distribution conspiracy, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) & 846, and he pleaded guilty to the charge. The parties agreed that defendant should be held responsible for 200-300 grams of cocaine, which produced a base offense level of 20 under U.S.S.G. § 2D1.1(c)(10). However, the probation office determined that defendant qualified as a career offender, which increased his base level to 32 under U.S.S.G. § 4B1.1(b). After deducting 3 levels for acceptance of responsibility, § 3E1.1, and coupled with the criminal history category of VI that applies in all career offender cases, see § 4B1.1(b), the PSR recommended an imprisonment range of 151-188 months.

Defendant argued that his career offender predicates should be considered part of the instant offense, but I rejected his argument and adopted the PSR's guideline calculations. I then imposed a sentence of 66 months on consideration of the arguments of the parties and the factors set forth in 18 U.S.C. § 3553(a). See United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008) (stating that to determine a defendant's sentence, the district court must first calculate and consider the sentence recommended by the advisory sentencing guidelines, then

to ascertain the actual sentence, it must apply the criteria set forth in § 3553(a) to the facts and circumstances of the defendant's particular case). In this memorandum, I set forth written reasons for the sentence.

## I. GUIDELINE DETERMINATION

In designating defendant a career offender, the PSR relied on two "controlled substance offenses" – a 1996 delivery of cocaine conviction, for which defendant received a sentence of 10 years in prison (PSR ¶ 102), and a 2002 possession with intent to deliver cocaine case, for which he was sentenced to 54 months in prison (PSR ¶ 103). Defendant argued that these two convictions were "related" to the instant offense and thus did not qualify as career offender predicates.

A career offender predicate must, according to application note 3 to § 4B1.2, properly score criminal history points under § 4A1.2. See United States v. Seib, 555 F. Supp. 2d 981, 983 (E.D. Wis. 2008). Section 4A1.2 states that the term "prior sentence" means any sentence imposed "for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Application note 1 explains that conduct that is part of the instant offense means conduct that is relevant conduct under U.S.S.G. § 1B1.3. U.S.S.G. § 4A1.2 cmt. n.1.

Under these rules, defendant's challenge failed. Defendant claimed that the same supplier who provided the cocaine involved in the instant offense also supplied him with the cocaine in his 1996 and 2002 cases. However, even if this were true, that did not make the cases the same under the guidelines. The instant conspiracy lasted from 2005 to May 2007, and the specific relevant conduct for which defendant was held accountable occurred in 2006 and 2007. Because the drugs involved in the 1996 and 2002 cases were not considered relevant conduct in the instant offense, those prior convictions scored separately and thus

2

served as proper career offender predicates.[1]

Defendant also objected to the scoring of the offense listed in ¶ 104 (possession of cocaine, second offense),[2] which he argued involved the incident that resulted in him being taken into custody and charged federally. Defendant presented no evidence that this offense was "transactionally related" to the instant offense, but the government agreed that it could be considered "related" to the instant offense such that it should not score criminal history points.

Even ignoring this offense, which <u>did</u> occur during the course of the instant conspiracy, the result was the same. Defendant fell into criminal history category VI based on the career offender designation, so dropping these 3 points did not change the guidelines. However, I noted that if this conviction were considered part of the instant offense, defendant would be entitled to a concurrent and adjusted sentence under U.S.S.G. § 5G1.3(b). Based on the parties' joint recommendation for such a sentence, I adjusted the instant sentence to, in effect, award credit back to April 2007, the occasion of defendant's arrest in the ¶ 104 case, thereby satisfying the purposes of § 5G1.3(b).

Finally, defendant noted that the parties recommended a lower guideline range in their plea agreement. However, as he also acknowledged, that agreement did not bind the

---

[1] As defense counsel acknowledged at the sentencing hearing, including these prior cases as relevant conduct would have increased the drug weight in the instant offense. Defendant could not have it both ways, taking advantage of a low drug weight while sweeping his prior cases into this one. According to the PSR, the 1996 case involved 29.32 grams of cocaine base (PSR ¶ 102) and the 2002 case 26.86 grams of cocaine case (PSR ¶ 103). Including these amounts may have triggered a statutory mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(iii). Without engaging in a theoretical, alternative guideline/sentencing calculation, given the possible consequences of including the prior cases as relevant conduct, defendant may have done better under the guidelines as I found them.

[2] Defendant received a sentence of 18 months in this case, which added 3 criminal history points to his score. This offense, like the present case, involved powder cocaine.

3

probation office or the court. I found that the PSR correctly computed defendant's guideline range. Defendant also argued that the career offender designation overstated his criminal history. I considered this argument in imposing the ultimate sentence, but it provided no basis for reconfiguring the guidelines.

## II. SENTENCE

### A. Section 3553(a) Factors

In imposing the ultimate sentence, the court must consider all of the factors in § 3553(a), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing specified in

4

§ 3553(a)(2). The district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007).

**B.     Analysis**

This prosecution arose out of the government's investigation of Calvin Coleman and Jimmie Durant, large-scale Milwaukee-area cocaine dealers, and their supplier, Robert Hampton. Coleman supplied defendant and others in this case with cocaine. In a post-arrest statement, Coleman said that he sold defendant 4 ½ ounces on two occasions, which defendant then distributed to his own customers. The parties agreed that defendant should be held responsible for 200-300 grams total.

The offense itself was not all that serious: the amounts involved were modest, and there was no evidence of weapon possession or violence. But defendant's prior record, which demonstrated that he could not stay away from drugs, cast this matter in a different light.

Defendant's record began with a marijuana possession case in 1994, for which the court placed him on probation. He was later revoked for "assaultive behaviors," which included hitting a friend of his girlfriend in the head with a brick. In 1995, he was convicted of disorderly conduct when he threatened to kill his girlfriend. Later in 1995, he was convicted of battery and bail jumping, arising out of an assault on his girlfriend while on bond in the DC case. In January 1996, he was convicted of cocaine delivery and sentenced to 10 years in state prison. He was paroled from that sentence on February 2, 2001, and tested positive for marijuana on March 15, 2001. More positive tests and other problems followed, and his agent offered him an alternative to revocation, but on March 9, 2002, he was arrested for possession with intent

5

to distribute cocaine, leading to his revocation and new charges. On December 18, 2002, a state court sentenced him to 54 months' imprisonment, to run concurrent with the revocation sentence, on the new cocaine charge. Unlike his first stint in prison, this time defendant did well, working as a driver transporting other inmates. He was released to extended supervision on August 29, 2006, but soon tested positive for cocaine and was arrested on new drug charges on April 13, 2007, leading to yet another revocation and a two year sentence, which he was serving at the time he appeared before me and which was set to discharge on April 19, 2009. Finally, defendant was convicted of possession of cocaine, 2d offense in state court arising out of the April 2007 arrest and sentenced to 18 months concurrent with the revocation sentence. This record clearly depicted someone who could not stay away from drugs unless incarcerated. He was also unable to comply with conditions of supervision in the community for any significant period of time.

Because he spent so much time in prison, defendant had limited opportunities to demonstrate positive character traits in the community. At age thirty-four, he compiled a very limited work record. He fathered two children, ages two years and five months, but was no longer involved with the mother. The mother stated that they were more like roommates when they were involved, defendant was rarely home, and he never did anything for her or their children. Defendant also had issues with substance abuse, and I provided for continued treatment as part of this sentence.

There were some positives. Defendant made efforts to better himself, earning his GED and taking various classes in prison as set forth in ¶ 131 of the PSR. He apparently did hold a job during his latest period of release, from November 2006 to April 2007. Defendant's mother also made positive statements about him. In his sentencing memo and during his

6

allocution, defendant discussed his desire to better himself and listed some of the courses and programming he completed in prison. I also considered in this regard defendant's efforts to cooperate with the government, which the government discussed at sentencing.

As noted, the guidelines called for a term of 151-188 months. That range was based primarily on defendant's classification as a career offender, and I have written in other cases about how the career offender guideline can sometimes produce sentences greater than necessary to satisfy the purposes of sentencing, see, e.g., United States v. Santoya, 493 F. Supp. 2d 1075, 1079-80 (E.D. Wis. 2007), something the Commission itself has acknowledged, United States v. Fernandez, 436 F. Supp. 2d 983, 989 (E.D. Wis. 2006) (citing U.S. Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004)). Defendant argued that the career offender designation overstated the severity of his record.

However, I found that defendant's prior record well earned him the designation of career offender. He demonstrated no ability to be law-abiding or to stay away from drugs. Aside from the predicate drug offenses, his record also contained offenses involving violence and intimidation. He fell in criminal history category IV or V, even without the career offender designation, despite the fact that his first three convictions were too old to score criminal history points. The fact that Calvin Coleman may have been his source in all of his prior drug cases did not mitigate his record; rather, it showed that he consistently returned to his old ways, even after serving significant time in prison. I could not accept defendant's argument that his conduct was motivated by drug use and poor judgment. I accepted that he had substance abuse issues, and I provided for treatment, but he could not blame his consistent drug trafficking on addiction. I also questioned his assertion that he was able to conform his behavior to the law when in a structured environment; he performed quite poorly on supervision

7

in the community. Finally, his previous sentences failed to deter him, so I had to consider a greater term to provide specific deterrence.

The only mitigating aspect I saw was that the specific offense conduct was not that serious. The offense involved a modest amount of cocaine, distributed over a limited period of time, with no other aggravating factors such as violence or weapon possession. Based on the mitigated nature of the particular offense conduct, I found that a sentence somewhat below the range would be sufficient to provide just punishment.

Defendant asked for a sentence of 37-46 months, but I found that such a sentence would fail to protect the public and deter defendant from re-offending. Rather, under all of the circumstances, I found a sentence of 120 months sufficient but not greater than necessary. This term adequately addressed the slight overstatement caused by the career offender guidelines, while still providing for deterrence and protection of the public.

The government asked for a 30% reduction under § 3553(a) to reward defendant for his cooperation. For the reasons provided on the record, and upon consideration of the factors under U.S.S.G. § 5K1.1, I found a 30% reduction appropriate. Therefore, I reduced the sentence to 84 months.

Finally, I accounted for the parties' joint recommendation that the sentence be fully concurrent with the state sentence he was serving. I therefore adjusted the instant sentence by 18 months, in addition to running it concurrently with the undischarged state sentences. This still provided for a significant incremental punishment, as the state sentences were set to discharge in April 2009.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 66 months,

to run concurrent with the sentences in State of Wisconsin, Milwaukee County Case No. 02-CF-1415 and 07-CF-1925. I recommended that defendant participate in any substance abuse treatment programs available, including the 500 hour program. Upon release, I ordered him to serve three years of supervised release, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 2nd day of September, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge